**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**IN RE SUBPOENA ISSUED TO CHIEF RICHARD MACCAULEY**

**RICHARD MACCAULEY,**

**Petitioner,**

**v.**

**MARQUITA TIBBS,**

**Respondent.**

**Miscellaneous Action No. 26-78 (JDB)**

**MEMORANDUM OPINION**

Marquita Tibbs was driving in Washington D.C., when she was pulled over and arrested by a United States Secret Service Uniformed Division (USSS-UD) officer for driving under the influence. Relying on evidence the USSS-UD officer obtained during the traffic stop, the District of Columbia charged Tibbs in D.C. Superior Court with three violations of the D.C. Code. Tibbs then moved to suppress the evidence from the traffic stop, arguing the officer did not have authority to make the stop or arrest, and to compel USSS-UD to provide documents establishing that authority. Tibbs also issued a subpoena, commanding USSS-UD Chief Richard Maccauley or a designated organizational witness to appear as a witness at a hearing on Tibbs's motions and to bring any documents establishing USSS-UD's authority to make traffic stops and arrests outside the White House grounds. See Subpoena [ECF 2-2] at 4–6. Chief Maccauley removed the subpoena to this Court, then moved to quash the subpoena. Notice of Removal [ECF 1]; Mot. to Quash [ECF 2] at 1. Tibbs moved to remand, or in the alternative, to enforce the subpoena. Mot. to Remand [ECF 11]. In the meantime, the D.C. Superior Court held a motions hearing and

ultimately issued a decision denying Tibbs's motions to suppress and compel. Because the subpoena was properly removed to this Court under the federal officer removal statute, Tibbs's motion to remand is denied. But because the D.C. Superior Court has now resolved the legal question for which the subpoena was requested, the motion to quash and motion to enforce are denied as moot.

**Background**

On December 21, 2024, a USSS-UD officer arrested Marquita Tibbs for driving under the influence and conducted an inventory search of her car. Mot. to Remand at 1. The District of Columbia then charged Tibbs in Superior Court with driving under the influence, operating a vehicle while impaired, and possession of an open container of alcohol. Mot. to Quash at 1–2.

Tibbs filed a motion to compel in Superior Court, asking for "documents that the USSS-UD relies upon for its authority to enforce D.C. traffic laws and arrest motorists for traffic offenses." Mot. to Compel at 3, District of Columbia v. Tibbs, No. 2025 CTF 003570 (D.C. Super. Ct. filed Oct. 29, 2025). She also filed a motion to suppress arguing that the USSS-UD officer who stopped her lacked the authority to do so, so the stop was unlawful. Mot. to Suppress [ECF 2-1] at 1. The Superior Court scheduled a motions hearing for May 2026. See Dkt., District of Columbia v. Tibbs, No. 2025 CTF 003570 (D.C. Super. Ct.) ("D.C. Super. Ct. Dkt.") (entry dated Feb. 26, 2026). In advance of that hearing, Tibbs sought and obtained the subpoena at issue in this case. The subpoena instructs "Chief Richard Maccauley, or his designated organizational witness," to appear at the motions hearing and to bring with him documents "concerning the stop and arrest authority" of USSS-UD officers outside White House grounds. Subpoena at 4.

The day before the motions hearing, May 20, Chief Maccauley removed the subpoena to this Court. Notice of Removal. The Superior Court held the motions hearing as scheduled on

May 21. See D.C. Super. Ct. Dkt. (entry dated May 21, 2026). Two months later, on July 30, that court ruled on the motion to compel and the motion to suppress, denying both in a detailed opinion. Order Denying Mots. at 4–5, District of Columbia v. Tibbs, No. 2025 CTF 003570 (D.C. Super. Ct. July 30, 2026). The court denied the motion to suppress, concluding that USSS-UD did have authority to conduct the traffic stop and arrest. Id. at 2–4. As for the motion to compel, the court concluded that "[t]he Motion to Compel seeks documents and testimony that either challenge USSS-UD's authority or that [the Office of the Attorney General for the District of Columbia] has already provided." Id. at 4. And to the extent the motion to compel sought evidence which could support the motion to suppress, it was moot, because the court had denied the motion to suppress on "purely legal grounds" and did "not require additional factual development, discovery, or testimony." Id. The following day, July 31, Tibbs filed a motion asking that court to reconsider its order denying the motion to suppress; the court orally denied the motion for reconsideration at a status conference on September 16. See D.C. Super. Ct. Dkt. (entry dated Sept. 16, 2026).

## Analysis

At the same time the Superior Court was considering and ultimately denying Tibbs's motion to suppress and motion to compel, the parties filed and briefed Chief Maccauley's motion to quash the subpoena and Tibbs's motion to remand or, in the alternative, enforce the subpoena. This Court did not become aware of the Superior Court's July 30th decision denying Tibbs's motions until very recently. On September 14, this Court scheduled a motions hearing for October 5, and having held that hearing, the Court is now prepared to rule on both motions.

### I. Motion to Remand

The federal officer removal statute permits "any officer … of the United States or of any agency thereof" to remove to federal district court "[a] civil action … that is commenced in a State

court." 28 U.S.C. § 1442(a)(1). That includes a proceeding where "a subpoena for testimony or documents[] is sought or issued." Id. § 1442(d)(1); see Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 413–15 (D.C. Cir. 1995). But not all civil actions against federal officers are removable. The statute instructs that removal is proper only if the "action" brought against a federal officer is "against or directed to" an "act" taken "under color of such office." 28 U.S.C. § 1442(a)(1). That condition "has long been interpreted to require 'that federal officer removal must be predicated on the allegation of a colorable federal defense.'" Brown & Williamson, 62 F.3d at 413 (quoting Mesa v. California, 489 U.S. 121, 129 (1989)).

Most of the requirements for removal under Section 1442(a)(1) are uncontested and clearly satisfied here. There is no question that Chief Maccauley is a federal officer under the meaning of the federal officer removal statute. See 18 U.S.C. § 3056A(a) (federal statute establishing the USSS-UD as "a permanent police force"). As Tibbs acknowledges, state court subpoenas are removable under the statute. Mot. to Remand at 3; see 28 U.S.C. § 1442(d)(1). And the removal statute expressly defines "State" to include the District of Columbia and "State court" to include D.C. Superior Court. 28 U.S.C. § 1442(d)(5)–(6).

Tibbs contests removal on only one ground: she argues that Chief Maccauley lacks a colorable federal defense. Mot. to Remand at 3. But Chief Maccauley has a federal defense that is at least colorable: sovereign immunity. See In re Subpoena In Collins, 524 F.3d 249, 252 n.2 (D.C. Cir. 2008). "In state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena." Hous. Bus. Journal, Inc. v. Off. of Comptroller of Currency, 86 F.3d 1208, 1211 (D.C. Cir. 1996). If a state subpoena commands "an agency employee" to "testify about information obtained in [his] official capacit[y]," courts "regard the subpoena as directed at the agency" and the employee may "remove the subpoena to

district court and assert sovereign immunity." In re Subpoena In Collins, 524 F.3d at 251. As a component of the Department of Homeland Security, a federal agency, the USSS-UD enjoys the government's sovereign immunity. See 18 U.S.C. § 3056A(a) (establishing the USSS-UD under the supervision of the Secretary of Homeland Security); cf. Williams v. Washington D.C. Eviction Marshals, Civ. No. 15-1801, 2016 WL 6082019, at *3 (D.D.C. Oct. 17, 2016) (acknowledging that the United States Marshals Service, as a component of the Department of Justice, is entitled to sovereign immunity).

Tibbs acknowledges that the United States and its agencies generally enjoy sovereign immunity but nonetheless argues that the USSS-UD waived its immunity. Mot. to Remand at 4–6. Generally, a waiver of the federal government's sovereign immunity "must be unequivocally expressed in statutory text," and "will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996). But there is a line of cases recognizing that the United States may also waive its immunity when it "comes into court and institutes a suit for redress … and submits a claim wholly in the nature of a private litigant," the so-called consent-by-lawsuit exception. United States v. Moscow-Idaho Seed Co., 92 F.2d 170, 173 (9th Cir. 1937). The key issue for both types of waiver is consent because "[t]he Federal Government cannot be sued without its consent." United States v. Navajo Nation, 556 U.S. 287, 289 (2009); see United States v. Mitchell, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

Tibbs claims that the government has waived its sovereign immunity both in statutory text and through the consent-by-lawsuit exception. First, she argues that the APA unequivocally waives the government's sovereign immunity because the APA waives immunity for certain "action[s] in a court of the United States," and, she claims, D.C. Superior Court is such a court.

Mot. to Remand at 7–8 (quoting 5 U.S.C. § 702). Second, she argues that USSS-UD "abandon[ed] its immunity from suit" under the consent-by-lawsuit exception by "voluntarily appearing in the role of suitor" and prosecuting her. Id. at 4–5.

This Court joins another judge in this district in rejecting the APA waiver argument. See Pretrial Servs. Agency for D.C. v. Sanders, 780 F. Supp. 3d 286, 294 (D.D.C. 2025). The APA "waives the Government's immunity from actions seeking relief other than money damages," even if the suit is not brought under the APA. Id. (citation modified). But the APA waives sovereign immunity "only for actions in a court of the United States," meaning that the government "retains its immunity from suit in state courts." Id. (citation modified). The Court concludes that the D.C. Superior Court is best treated "as a state court rather than a court of the United States" for purposes of the APA. Id. at 294–95. Although the D.C. court system was established by Congress, Congress intended that the courts "function essentially like the local courts found in the 50 States," and likewise intended for federal courts to "treat the District of Columbia judicial system as if it were a state system," not a court of the United States. Id. (citation modified) (explaining that federal courts treat D.C. courts as state courts for myriad purposes). The text of the APA also does not "unequivocally express[]" an intent to waive the federal government's immunity for all criminal prosecutions brought in Superior Court. Lane, 518 U.S. at 192; cf. Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001) (Congress "does not … hide elephants in mouseholes.").

Tibbs's consent-by-lawsuit argument also fails. Tibbs argues that "the USSS-UD does not have immunity from the orders of the [D.C. Superior Court] overseeing a criminal prosecution that the [federal] government, itself, initiated." Mot. to Remand at 4. But that argument is factually flawed. The prosecution against Tibbs was brought by the District of Columbia, not by the United States. The prosecuting attorneys are members of the Office of the Attorney General of D.C., not

federal attorneys, and it was those attorneys, not the USSS-UD, who initiated the prosecution in Superior Court. See id. In fact, the provisions of the D.C. Code which Tibbs is charged with violating are enforceable only by the District of Columbia. See D.C. Code §§ 50-2206.11, 50-2206.14, 25-1001(a)(2); D.C. Code § 23-101(a) (explaining that violations of the D.C. Code punishable by a maximum of one year imprisonment may be prosecuted only by the District of Columbia). The consent-by-lawsuit exception cannot apply because the United States did not consent by initiating a suit—indeed, it is not pursuing a suit against Tibbs at all. See Mot. to Remand 4–6 (citing consent-by-lawsuit cases where the federal government brought suit against a party in its own name).

To get around this, Tibbs argues that although the District of Columbia brought the charges against her, the USSS-UD "is a member of the local prosecution team" and has "acceded to the process of the Superior Court." Mot. to Remand at 4, 6. But Tibbs does not cite any case from any court, nor does this Court know of any, holding that a federal officer waives the government's sovereign immunity by testifying or providing evidence for a state's prosecution of a defendant in a state court. The consent-by-lawsuit exception may well have applied if Tibbs's prosecution had been brought by the United States. But see Pretrial Servs., 780 F. Supp. 3d at 291–92, appeal pending No. 25-5194 (D.C. Cir.) (concluding that the consent-by-lawsuit exception "does not extend to criminal prosecutions" even if brought by the United States). But the United States cannot be said to have "consented" to suit where it did not decide to initiate the prosecution against Tibbs and has no formal ability to terminate the prosecution.

Having considered and rejected Tibbs's waiver arguments, the Court concludes that USSS-UD had a colorable federal defense, sovereign immunity, so the subpoena was properly

removed. Accordingly, Tibbs's motion to remand based on the lack of a colorable defense is denied.

**II. Motions to Quash and Enforce**

Turning to Chief Maccauley's motion to quash and Tibbs's motion to enforce, the Court will deny both motions as moot. Before this Court was able to rule on the pending motion to quash or motion to enforce, the Superior Court ruled on two motions pending before that court: Tibbs's motion to compel and motion to suppress. The court denied the motion to suppress, concluding that USSS-UD had the authority to conduct the traffic stop and arrest. Order Denying Mots. at 2–4. And the court denied the motion to compel as moot, because it sought discovery "directed exclusively toward developing, supporting, or obtaining factual material for [the] Motion to Suppress," which had been resolved "on purely legal grounds that [did] not require additional factual development, discovery, or testimony." Id. at 4.

Because the Superior Court has now resolved both the motion to suppress and the motion to compel—which are the very motions in support of which Tibbs subpoenaed Chief Maccauley to testify—there is no "live controversy" between the parties and the issue is moot. Hall v. Beals, 396 U.S. 45, 48 (1969); see City of El Paso v. Reynolds, 887 F.2d 1103, 1106 (D.C. Cir. 1989) (holding dispute over subpoena of Senator was moot where there was "no pending trial in which such discovery can be used"); see also Lopez Contractors, Inc. v. F&M Bank Allegiance, 90 F. App'x 549, 550 (D.C. Cir. 2004) (holding motion to quash subpoena of federal employee was moot where state court entered final judgment in underlying state action). Nor is there relief this Court can provide—the Court cannot require Chief Maccauley to testify at a motions hearing that has already happened, nor can it require the Superior Court to reconsider its decision resolving the question of the USSS-UD's authority to conduct the traffic stop and denying Tibbs's motions to

suppress and compel. See City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000) (explaining that a case is moot where the court cannot grant "any effectual relief" to the prevailing party). At the motions hearing, the parties indicated their general agreement that the dispute is moot.

But at that hearing, Tibbs (for the first time) argued that although the dispute over the subpoena is largely moot, the dispute over her request for "[t]he standard operating procedure and related documents, and training material for [USSS-UD] Officers for inventory searches" is not moot. Subpoena at 6. Tibbs indicated that she would issue a new subpoena in Superior Court requesting those documents. Those documents, her counsel explained, would be used not in support of the motion to suppress based on the USSS-UD's authority to conduct traffic stops and make arrests (a matter which the Superior Court has already ruled on), but in support of a forthcoming motion to suppress evidence based on the propriety of the inventory search of Tibbs's car (a matter which the Superior Court has not ruled on because Tibbs has yet to file the motion). According to Tibbs, that narrower dispute falls under an exception to mootness: "the exception to mootness for issues that are capable of repetition, yet evading review." Senate Permanent Subcommittee on Investigations v. Ferrer, 856 F.3d 1080, 1087–88 (D.C. Cir. 2017) (citation modified).

The Court disagrees. Tibbs cites no authority which would allow this Court to quash or enforce a subpoena that has not yet issued in state court in support of a motion to suppress that likewise is yet to be filed in that court.[1] Nor does Tibbs identify any case in which a federal court

[1] The cases Tibbs cited at the motions hearing are not to the contrary. In Senate Permanent Subcommittee on Investigations v. Ferrer, the D.C. Circuit declined to apply the mootness exception to a dispute over a congressional subpoena after concluding there was not "a reasonable expectation or demonstrated probability that the [challenged] action [would] recur." 856 F.3d at 1088 (citation modified). And Church of Scientology of California v. United States, 506 U.S. 9 (1992), merely stands for the proposition that a case does not become moot just because the court cannot return the parties to the status quo, so long as the court can award some "effectual relief." Id. at 12–13. Neither case stands for the proposition that a federal court exercising removal jurisdiction may reach out to decide whether to quash or enforce a subpoena that has not yet issued in state court or been removed to the federal court.

exercising removal jurisdiction applied the capable of repetition yet evading review exception based on the potential that a subpoena might again issue in state court and might again be removed to federal court. See Ferrer, 856 F.3d at 1087–88 (addressing dispute over legislative subpoena); Trump v. Mazars USA, LLP, 39 F.4th 774, 786 (D.C. Cir. 2022) (same); In re Sealed Case, 877 F.2d 976, 981 n.6 (D.C. Cir. 1989) (addressing dispute over grand jury subpoena). This Court will not be the first. Indeed, because this Court's jurisdiction in this removal action derives from the state court's jurisdiction at "the time of removal," the Court is not convinced that it has jurisdiction to review subpoenas filed in Superior Court after the time of removal, much less subpoenas that have not yet been filed at all. Cavallini v. State Farm Mut. Auto. Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995); see Lambert Run Coal Co. v. Baltimore & O.R. Co., 258 U.S. 377, 382 (1922) (explaining this Court's removal jurisdiction "is, in a limited sense, a derivative jurisdiction"); Merkulov v. U.S. Park Police, 75 F. Supp. 3d 126, 129–30 (D.D.C. 2014) (discussing applicability of doctrine of derivative jurisdiction to cases removed under federal officer removal statute).

Furthermore, this argument comes to the Court in a strange posture. Tibbs challenges mootness on the grounds that the subpoenas she has or will issue can evade review. But Tibbs has asked this Court to remand the case, and thus the question of whether to quash or enforce the existing subpoena, back to the Superior Court. See Mot. to Remand. Having asked this Court to remand the case to Superior Court, Tibbs cannot simultaneously insist that the Superior Court's actions are depriving this Court of its ability to review the subpoena. Rather than accept that argument, the Court decides the better procedure is to deny the motions currently pending before the Court on mootness grounds, and to address any further subpoenas if they are issued and then removed to federal court.

* * *

For the foregoing reasons, the Court will deny Tibbs's motion to remand, and deny as moot Tibbs's motion to enforce the subpoena and Chief Maccauley's motion to quash the subpoena. A separate order will issue.

/s/
JOHN D. BATES
United States District Judge

Dated: October 8, 2026